[Cite as *Melton v. Guy*, 2016-Ohio-194.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| TIMOTHY A. MELTON | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff - Appellant | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| DONNA GUY, et al., | : | Case No. 15-CA-33 |
| | : | |
| Defendants - Appellees | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Licking County
                             Court of Common Pleas, Case No.
                             2014 CV 00057

JUDGMENT:                    Affirmed in part;
                             Reversed and remanded in part

DATE OF JUDGMENT:            January 20, 2016

APPEARANCES:

For Plaintiff-Appellant            For Defendants-Appellees
JOHN K. FITCH                      KEONA R. PADGETT
The Fitch Law Firm                 MATTHEW L. SCHRADER
580 South High Street, Ste. 100    Reminger Co., L.P.A.
Columbus, Ohio 43215               65 East State Street, 4th Floor
                                   Columbus, Ohio 43215

                                   For Ohio Bureau of Worker's
                                   Compensation
                                   ANDREW P. COOKE
                                   ADAM J. BENNETT
                                   Cooke Demers, LLC
                                   260 Market Street, Suite F
                                   New Albany, Ohio 43054

*Baldwin, J.*

{¶1}　Plaintiff-appellant Timothy Melton appeals from the May 12, 2015 Nunc Pro Tunc Judgment Entry of the Licking County Court of Common Pleas.

STATEMENT OF THE FACTS AND CASE

{¶2}　On October 18, 2012, appellant, a truck driver, was injured in an automobile accident. At the emergency room, appellant was diagnosed with a fracture of his fifth metacarpal on the left-hand side.　Appellant, on January 22, 2014, filed a complaint against appellees Donna Guy, the driver, and Ed's Sleds, the owner of the vehicle that appellee Guy was driving, alleging negligence.　Appellant alleged that he sustained permanent injuries, pain and suffering, mental anguish and emotional distress, past and future medical expenses and wage loss and permanent impairment of his earning capacity as a result of the accident.

{¶3}　After the parties stipulated as to liability, a jury trial commenced on April 16, 2015. At trial, Dr. Paul Gutheil, appellant's family doctor, testified, via videotaped deposition, on behalf of appellant and Dr. James Popp testified, via videotaped deposition, on behalf of appellees.　Appellant and appellee Donna Guy also testified.

{¶4}　At the conclusion of the trial, the jury, on April 17, 2015, found in favor of appellant and against appellee Donna Guy and awarded appellant $50,000.00 for past economic damages and $30,000.00 for past non-economic damages, for a total of $80,000.00. The jury declined to award appellant any future damages.　The jury, in an interrogatory, found that the injury sustained by appellant to his left hand was not a

permanent and substantial physical deformity, loss of use of a limb, or loss of a bodily organ system. An Entry memorializing the jury's verdict was filed on April 17, 2015.

{¶5}   Appellant, on April 27, 2015, filed a Motion to Tax Costs.

{¶6}   The trial court, on May 12, 2015, filed a Nunc Pro Tunc Judgment Entry. The trial court, in such Judgment Entry, assessed costs to appellant and stated that its order was a final appealable order.

{¶7}   Appellant now raises the following assignments of error on appeal:

{¶8}   THE TRIAL COURT ERRED IN SUSTAINING OBJECTIONS TO THE DEPOSITIONS OF DRS. GUTHEIL AND POPP AND THE MRI, EMG AND X-RAY REPORTS, AS WELL AS THE OBSERVATIONS OF THE APPELLANT'S TREATING PROVIDERS, ON THE BASIS OF HEARSAY.

{¶9}   THE TRIAL COURT ERRED IN ASSESSING COSTS TO APPELLANT, THE PREVAILING PARTY.

I

{¶10}   Appellant, in his first assignment of error, argues that the trial court erred in sustaining objections to the depositions of Dr. Gutheil and Dr. Popp and the MRI, EMG and X-ray reports, as well as the observations of appellant's treating providers, on the basis of hearsay.

{¶11}   As an initial matter, we note that the parties stipulated as to the authenticity of the records at issue and agreed that it was unnecessary to call records custodians. However, appellees did not waive their hearsay objections to the admission of the records.

{¶12} The admission or exclusion of relevant evidence lies within the sound discretion of the trial court. *State v. Sage,* 31 Ohio St.3d 173, 510 N.E.2d 343 (1987). In order to find an abuse of discretion, we must find that the trial court's decision was arbitrary, unconscionable, or unreasonable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶13} Appellant, after the accident, had been referred by Dr. Gutheil to Dr. Keith LaDu, an orthopedic surgeon. Dr. LaDu did not testify at trial. During his deposition, Dr. Gutheil testified that Dr. LaDu's notes indicated a diffuse swelling of the hands and fingers and that "it's consistent with the injury overall." Deposition of Dr. Gutheil at 19. Appellees' objection to such testimony on the basis of hearsay was sustained by the trial court and that portion of his video trial deposition was redacted prior to the same being played for the jury. After appellant attempted to have Dr. LaDu's office notes and operative report admitted at trial as an exhibits, appellees objected because they contained his opinions, impressions and plans and Dr. LaDu was not a testifying witness and the objection was sustained.

{¶14} Dr. Gutheil's testimony during his deposition that the MRIs revealed cysts on the carpal bones of the hand that "are almost always due to trauma and fracture of the carpal bones" (Deposition Transcript of Dr. Gutheil at 20), his testimony that a positive EMG (ordered by Dr. Faher) noted that appellant's medial nerve had been injured[1], and his testimony as to what was significant about the findings of an MRI taken on April 1, 2013 and another MRI taken on February 28, 2015 were all stricken on the basis of hearsay. The trial court further sustained appellees' objection to the admission of

---

[1] Dr. Gutheil was permitted to testify that the EMG had been performed, but was not allowed to read from the same.

appellant's physical therapy records after appellee's counsel argued that they "contain assessments and recommendations beyond simply documenting physical condition." Trial Transcript at 84. Appellant made a formal proffer.

{¶15} With respect to Dr. Popp, appellant, during Dr. Popp's deposition, questioned Dr. Popp about the x-ray report taken immediately after the accident. After Dr. Popp was asked what the radiologist had concluded in such report, the trial court sustained appellee's objection to such testimony and such testimony was excluded.

{¶16} According to appellant, Dr. LaDu's observations and those made by the neurologist with respect to the EMG, the radiologists with respect to the MRIs and appellant's physical therapists were exceptions to the hearsay rule under Evid.R. 803(6) and were improperly excluded. The trial court, as is stated above, excluded the above testimony and records on the basis of hearsay. Evid.R. 801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 803 contains hearsay exceptions. Evid.R. 803(6) states as follows:

> (6) Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other

qualified witness or as provided by Rule 901(B)(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

{¶17} The Staff Notes to this rule note that:

The Ohio rule departs from the Federal Evidence rule by deleting "opinions and diagnoses" as admissible under the section. It is not clear how far present Ohio law permits such evidence to be admitted. In *Hytha v. Schwendeman* (1974), 40 Ohio App.2d 478, the Franklin County Court of Appeals set forth seven criteria for a diagnosis to be admissible when contained in a hospital record. The *Hytha* case may retain validity in so far as it may assist in determining the point at which, in medical records, an act, event or condition admissible under the exception becomes an impermissible opinion or diagnosis under the rule.

{¶18} As noted by the court in *Ruth v. Moncrief*, 2nd Dist No. 18479, 2001-Ohio-1709 at 3: "The great weight of authority in Ohio holds that medical opinions and diagnoses are not within the hearsay exception of Evid.R. 803(6). See, *e.g., Meyers v. Hot Bagels Factory, Inc.* (1999), 131 Ohio App.3d 82, 101 (First District); *Hytha v. Schwendeman* (1974), 40 Ohio App.2d 478, syllabus (Tenth District); *Bush v. Burchett*

(June 13, 1995), Athens App. No. 94CA2237, unreported, at 3-4 (Fourth District)." See also *Guarino-Wong v. Hosler*, 1st Dist. No. C-120453, 2013-Ohio-1625 in which the court held that a non-testifying doctor's report and testimony from other doctors quoting that report was not admissible under Evid.R. 803(6) because the evidence contained the non-testifying doctor's opinions.   The court noted at paragraph 17 that "other districts have joined the *Meyers* court in concluding that medical records containing opinions and diagnoses are not admissible under Evid.R. 803(6)."

{¶19}  Based on the foregoing, we find that the trial court did not err in excluding the above testimony and records since they contained not just observations, but the assessments, opinions impressions and recommendations of non-testifying doctors and medical personnel. Moreover, we note that while appellant argues that the trial court erred in striking his testimony relating to an x-ray that was taken in his office on the basis of hearsay, such testimony was contained in a response to a question about the significance of MRI findings.

{¶20}  Moreover, assuming arguendo, that the trial court erred in excluding the specified testimony and records, we find that such error was harmless. "An improper evidentiary ruling constitutes reversible error, however, only when the error affects the substantial rights of the adverse party or the ruling is inconsistent with substantial justice." *Beard v. Meridia Huron Hosp.,* 106 Ohio St.3d 237, 2005–Ohio–4787, 834 N.E.2d 323, ¶ 35. In order to find that substantial justice has been done, "the reviewing court must not only weigh the prejudicial effect of those errors but also determine that, if those errors had not occurred, the jury or other trier of the facts would probably have made the same decision." (Citations omitted). *Id.* at ¶ 35, 834 N.E.2d 323.

{¶21} At issue was whether or not appellant's injuries were permanent and continuing. Appellant testified that after Dr. LaDu performed surgery on his hand, he attended physical therapy for about four months and that he was off of work completely for approximately six weeks. When he returned to work, appellant was on light duty until September of 2013. Appellant testified that in 2014, he changed job positions because he was having a hard time lifting and moving freight with his hand due to pain. According to appellant, he cannot make a fist anymore with his left hand and is called "hook" by his co-workers. Trial Transcript at 26. Appellant also testified that he continued having problems with his left hand, including pain and swelling, and that he did not have any of those types of problems with his left hand prior to the accident. Appellant stated that he used ice every night as a method to control the pain and swelling and that he did not like taking drugs. He agreed that when he worked with his left hand, it became more painful and tended to swell.

{¶22} On cross-examination, appellant testified that he was returned to work by Dr. Gutheil's office without restrictions in September of 2013 and was returned to do exactly what he had been doing before the accident. He admitted that other than the Naproxen that he took for a short time, he had never taken any medications for the pain in his wrist, hand and thumb and was not taking any drugs as of the time of trial. Appellant also testified that he had not been back to see Dr. LaDu for any medical care or treatment since April of 2013. The following testimony was adduced when appellant was asked if he had any plans for future medical treatment:

{¶23} A: Well, according to Dr. Gutheil, which I didn't know I had to have more surgery maybe down the road. I don't – that kind of got to me. I didn't know that was going to happen.

{¶24} Q: Was that the first time that you had heard from Mr. Gutheil that you might have to have surgery in the future is when you watched that deposition?

{¶25} A: Yes, sir.

{¶26} Q: In other words, in all your visits with Dr. Gutheil in his office, he never told you you were going to need surgery in the future, did he?

{¶27} A: I don't always see Dr. Gutheil. I usually see his daughter.

{¶28} Q: And my question was a little bit more broad. Every time you're at Dr. Gutheil's office, during none of those visits at Dr. Gutheil's office did anybody ever tell you that you were going to need surgery in the future, is that fair?

{¶29} A: That's fair.

{¶30} Q: And that first time that you heard that you might need surgery for a ligament in your wrist was when you heard Dr. Gutheil's testimony this morning just like the ladies and gentlemen of the jury did.

{¶31} A: That's correct.

{¶32} Trial Transcript at 56-57.

{¶33} On cross-examination, appellant testified that he had a family history of arthritis. He testified that during visits to Dr. Gutheil in February of 2013 and June of 2013, he did not complain of hand, wrist or thumb pain. He further stated that he did not recall indicating to Dr. Gutheil's daughter, who is also a doctor, in September of 2013 that his thumb pain was better and describing his pain as a one out of ten. Appellant also testified

that after returning to work in September of 2013, he did not see a medical doctor about his left hand, wrist or thumb until he saw Dr. Season in November of 2014 at his attorney's request.  During that time, he was working 55 to 60 hours per week as a driver. Appellant agreed that the only reason he saw Dr. Gutheil in November of 2014 was because Dr. Season sent him to Dr. Gutheil for x-rays.   Appellant testified that from September of 2013 until January of 2015 when Dr. Gutheil sent him for an MRI, he had no treatment on his left hand, wrist or thumb.  He further agreed that since the MRI in January of 2015, he had had no treatment for his left hand, wrist or thumb.

{¶34}  As is stated above, the deposition testimony of Dr. Paul Gutheil, appellant's family doctor, was played for the jury. Dr. Gutheil testified that arthritis has many causes, including trauma, and that erosive arthropathy, from which appellant suffered, was almost always due to trauma.  Dr. Gutheil testified that appellant sustained injuries "over across the entire part of his hand" and sustained a fracture of the fifth metacarpal. Deposition Transcript of Dr. Gutheil at 16.  Appellant also had injuries to the median nerve and digital nerves, fractures to the carpal bones, a torn triangular fibrocartilage and had developed a cyst in the carpal bones as a result of trauma. Dr. Gutheil opined that the injuries were a result of the accident. According to Dr. Gutheil, the torn triangular fibrocartilage required surgery or appellant would lose function of his wrist. When asked if the conditions were permanent, Dr. Gutheil testified that they were and would "progress and be worse down the road." Deposition Transcript of Dr. Gutheil at 39. He testified that arthritis always got worse and that appellant had a substantial and permanent physical deformity in his left hand as a direct result of the accident and could not exist without medication. The following is an excerpt from his testimony:

Q: Was the following medical treatment necessary and made necessary as a direct and proximate result of the accident: The EMS transport; the initial hospitalization, or ER visit as Genesis Hospital in Zanesville; the treatment he received at your office; the treatment, including surgery, by Dr. LaDu; the physical therapy that he received; the treatment by Dr. Cassandra; the two MRIs; the EMG; and the x-rays, were all of those things necessary and made necessary as a direct and proximate result of his accident?

Q. Go ahead.

A: Absolutely. They were absolutely the way to go about treating trauma like this that showed on the original MRI, not knowing there was more fractures and all that involved. But the treatment was absolutely correct. And to follow that treatment by not doing just a MRI a year ago, you've got to have fresh MRIs because the disease process, when you know how the disease process with this kind of an injury, you know it's gonna get worse, so you repeat it.

{¶35} Deposition Transcript of Dr. Gutheil at 40.

{¶36} During his deposition, Dr. Gutheil was questioned about the opinions of Dr. James Popp, who had examined appellant at the request of the defense. He stated that he disagreed with Dr. Popp's conclusion that the only injury that appellant suffered in the accident was to the fifth metacarpal. Dr. Gutheil further testified that he saw appellant in

his office on June 7, 2013 and that appellant indicted that his pain was getting better and that his office notes from a visit on July 17, 2013 indicated that appellant's pain was a three out of ten. Dr. Gutheil's daughter, after a visit on September 20, 2013, noted that appellant's pain was a one out of ten. Appellant did not complain of any problems with his left hand, wrist or thumb during several visits. Dr. Gutheil admitted that his office released appellant to return to work with no restrictions as of September 23, 2013 and that appellant received no treatment from him between October 21, 2013 and November 18, 2014. During the November 2014 visit, Dr. Gutheil took x-rays of appellant's left hand and wrist, but he did not take x-rays of appellant's right hand and wrist for comparison. There was no notation in Dr. Gutheil's record that appellant complained of any pain in his hand or wrist during a visit on February 12, 2015.

{¶37} After appellant rested, the deposition of Dr. James Popp, the defense expert, was played for the jury. Dr. Popp, an orthopedic surgeon who examined appellant on March 2, 2015 and ordered x-rays of both of appellant's thumbs and wrists for comparison purposes, testified that appellant sustained a fracture of the fifth metacarpal bone of his left hand. He testified that appellant had arthritis in both wrists and thumbs, although the left wrist was somewhat worse than the right. He opined that appellant's injury to his left fifth metacarpal was not permanent and took six months to heal following physical therapy. When asked, he testified that he did not believe that appellant sustained any injury to his left thumb as a result to the accident or any significant injury to his left wrist and that while appellant may have sprained or strained his wrist or hand, strains typically resolved within six weeks to three months. Dr. Popp testified that any further

treatment that appellant received after he completed his physical therapy would not have been beneficial.

{¶38}  Dr. Popp also reviewed an MRI that was performed on March 5, 2015 which showed that appellant has arthritis. He testified that appellant did not have cysts in his left hand that resulted from the accident and concluded that more likely than not, appellant had arthritis prior to the accident. Dr. Popp also opined that the accident did not cause appellant to sustain any permanent physical deformity in his left wrist, that appellant was able to independently care for himself, and that appellant was able to perform life sustaining activities.

{¶39}  Dr. Popp also testified that   he found substantial decreased grip strength in appellant's left hand when he examined him and that it was abnormal. Dr. Popp agreed that there was no history of such decreased grip strength prior to the accident and that trauma can result in arthritis. He opined that appellant probably sprained his wrist and broke his finger in the accident. When asked if it was reasonable for appellant to be completely off of work for period of time after the accident and surgery and then to go on extended light duty until September of 2013, Dr. Popp stated that it was not unreasonable. He further testified that appellant had normal grip strength in his right hand and no history of complaints with respect to his right hand.  He also testified that it was common for the triangular fibrocartilage to be "degeneratively worn over time" and that "at the age of 60, probably 60 percent of those tear." Deposition of Dr. Popp at 61.

{¶40}  Based on the foregoing, we find, that based on the testimony that was admitted, any errors in excluding the above specified testimony and records was not prejudicial. The jury, as trier of fact, heard testimony from appellant and his witness, Dr.

Gutheil, and the defense witness, Dr. Popp, and determined that appellant's injury to his hand was not permanent.

{¶41}   Appellant's first assignment of error is, therefore, overruled.

II

{¶42}   Appellant, in his second assignment of error, argues that the trial court erred in assessing costs to him when he was the prevailing party.

{¶43}   According to Civ.R. 54(D), "[e]xcept when express provision therefor is made either in a statute or in these rules, costs shall be allowed to the prevailing party unless the court otherwise directs." A prevailing party is generally the party "'in whose favor the decision or verdict is rendered and judgment entered.'" *Hagemeyer v. Sadowski*, 86 Ohio App.3d 563, 566, 621 N.E.2d 707 (6th Dist 1993).  See also *Falther v. Toney*, 5th Dist. Fairfield No. 05 CA 32, 2005-Ohio-5954 at paragraph 28 (observing by comparison that "[t]he United States Supreme Court has defined a "prevailing party" as one who has been awarded at least some relief on the merits of his claims.").

{¶44}   The Ohio Supreme Court has recognized that the recovery of costs provided in Civ.R. 54(D) is not a grant of absolute right for court costs to be allowed to the prevailing party. *State ex rel. Gravill v. Fuerst,* 24 Ohio St.3d 12, 13, 492 N.E.2d 809 (1986). The phrase "unless the court otherwise directs" is interpreted to grant "the court discretion to order that the prevailing party bear all or part of his or her own costs." *Vance v. Roedersheimer,* 64 Ohio St.3d 552, 555, 597 N.E.2d 153 (1992). Therefore, such a decision will not be disturbed on appeal absent an abuse of discretion. *Holmes Cty. Bd. of Commrs. v. McDowell,* 169 Ohio App.3d 120, 2006–Ohio–5017, 862 N.E.2d 136, ¶ 43 (5th Dist.). In order to find an abuse of discretion, we must determine the trial court's

decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶45} As noted by the court in *Lofino Properties, L.L.C. v. Wal-Mart Stores, Inc.*, 2nd Dist. Greene No. 2003 CA 57, 2004-Ohio-458 at paragraph 31: "a trial court will be found to have abused its discretion when it declines to award costs to a prevailing party absent an explanation. *Dyer v. Clark* (May 5, 1992), Greene App. No. 91 CA 12, citing *Walton Commercial Enterprises, Inc. v. Associations, Conventions, Tradeshows, Inc.* (Dec. 31, 1990), Franklin. App. 90AP-581; *Cutlip v. Hill* (Oct. 18, 1989), Wayne App. CA No. 2476." See also *Vilagi v. Allstate Indemn. Co.,* 9th Dist. Lorain App. No. 03CA008407, 2004-Ohio-4728, at ¶ 25-30.

{¶46} In the case sub judice, the trial court did not give any explanation for taxing costs to appellant despite appellant's Motion to Tax Costs[2]. Appellant, in his motion, asked the trial court to tax as costs the expenditures associated with taking the depositions of Dr. Popp and Dr. Gutheil, including the costs of the court reporter and the videographer. Both video depositions were played at trial. For such reason, we cannot determine whether or not the trial court abused its discretion and must reverse the judgment of the trial court and remand the matter for further proceedings.

{¶47} Appellant's second assignment of error is, therefore, sustained.

---

[2] The trial court did not expressly deny appellant's motion, but taxed costs against appellant in its May 12, 2015 Nunc Pro Tunc Judgment Entry.

{¶48} Accordingly, the judgment of the Licking County Court of Common Pleas is affirmed in part and reversed in part. This matter is remanded for further proceedings consistent with this Opinion.

By: Baldwin, J.

Gwin, P.J. and

Delaney, J. concur.